UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

DONALD JASON CHAMBERS,

                Plaintiff,

v.                                                    Case No. 7:14-CV-190 (GTS)

COMMISSIONER OF SOCIAL SECURITY,

                Defendant.
_____

APPEARANCES:                                    OF COUNSEL:

CONBOY, McKAY, BACHMAN & KENDALL, LLP     LAWRENCE HASSELER, ESQ.
  Counsel for Plaintiff
307 State St.
Carthage, NY 13619

U.S. SOCIAL SECURITY ADMIN.                 SIXTINA FERNANDEZ, ESQ.
OFFICE OF REG'L GEN. COUNSEL – REGION II
  Counsel for Defendant
26 Federal Plaza – Room 3904
New York, NY 10278

Glenn T. Suddaby, Chief United States District Judge,

## **<u>DECISION and ORDER</u>**

      Currently before the Court, in this Social Security action filed by Donald Jason Chambers ("Plaintiff") against the Commissioner of Social Security ("Defendant" or "the Commissioner") pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3), are the parties' cross-motions for judgment on the pleadings. (Dkt. Nos. 12, 13.) For the reasons set forth below, Plaintiff's motion is denied and Defendant's motion is granted.

## I. RELEVANT BACKGROUND

### A. Factual Background

Plaintiff was born on February 26, 1967. (T. 136.) He received his GED. (T. 169.) Generally, Plaintiff's alleged disability consists of degenerative disc disease. (T. 168.) His alleged disability onset date is February 26, 2008. (T. 136.) His date last insured is December 31, 2014. (T. 164.) He previously worked as a laborer. (T. 155.)

### B. Procedural History

On November 12, 2010, Plaintiff applied for a period of Disability Insurance Benefits ("SSD") under Title II of the Social Security Act. (T. 136.) Plaintiff's application was initially denied, after which he timely requested a hearing before an Administrative Law Judge ("the ALJ"). On June 28, 2012, Plaintiff appeared before the ALJ, Elizabeth W. Koennecke. (T. 33-62.) On July 26, 2012, ALJ Koennecke issued a written decision finding Plaintiff not disabled under the Social Security Act. (T. 12-32.) On January 14, 2014, the Appeals Council ("AC") denied Plaintiff's request for review, rendering the ALJ's decision the final decision of the Commissioner. (T. 1-7.) Thereafter, Plaintiff timely sought judicial review in this Court.

### C. The ALJ's Decision

Generally, in her decision, the ALJ made the following five findings of fact and conclusions of law. (T. 17-32.) First, the ALJ found that Plaintiff met the insured status requirements through December 31, 2014 and Plaintiff had engaged in substantial gainful activity from April 2008 to March 2009. (T. 17.) Second, the ALJ found that Plaintiff had the severe impairments of degenerative disc disease and degenerative joint disease of the lumbar spine. (T. 18.) Third, the ALJ found that Plaintiff did not have an

impairment that meets or medically equals one of the listed impairments located in 20 C.F.R. Part 404, Subpart P, Appendix. 1.  (T. 19.)  Fourth, the ALJ found that Plaintiff had the residual functional capacity ("RFC") to perform light work.  (*Id.*)[1]  However, Plaintiff would need to alternate positions occasionally, which the ALJ defined as three times in an eight hour workday during ordinary breaks and lunch breaks.  (T. 20.)  Plaintiff was also restricted to occasional bending, climbing, and crouching.  (*Id.*)  Plaintiff could not crawl.  (*Id.*)  Plaintiff had no manipulative limitations.  (*Id.*)  Fifth, the ALJ determined that Plaintiff was capable of performing his past relevant work as a trainer/grader in a cheese factory and as a telemarketer.  (T. 26.)

## II.  THE PARTIES' BRIEFINGS ON PLAINTIFF'S MOTION

### A.  Plaintiff's Arguments

Plaintiff makes essentially five separate arguments in support of his motion for judgment on the pleadings.  First, Plaintiff argues the ALJ failed to properly asses Plaintiff's depression at step two.  (Dkt. No. 12 at 12-13 [Pl.'s Mem. of Law].)  Second, Plaintiff argues the ALJ failed to properly evaluate the medical evidence in the record.  (*Id.* at 14-17.)  Third, Plaintiff argues the ALJ substituted her own judgement for competent medical opinions.  (*Id.* at 17-18.)  Fourth, Plaintiff argues the ALJ failed to properly consider and evaluate Plaintiff's credibility.  (*Id.* at 18-22.)  Fifth, and lastly, Plaintiff argues the ALJ failed to properly assess Plaintiff's RFC.  (*Id.* at 22-25.)

---

[1] Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time.  20 C.F.R. § 404.1567(b).

3

### B. Defendant's Arguments

In response, Defendant makes three arguments. First, Defendant argues that the ALJ properly assessed the severity of Plaintiff's impairments at step two. (Dkt. No. 13 at 5-9 [Def.'s Mem. of Law].) Second, Defendant argues the ALJ properly evaluated the medical opinions in the record. (*Id.* at 9-19.) Third, Defendant argues the ALJ correctly found that Plaintiff's subjective complaints were not credible to the extent alleged. (*Id.* at 19-23.)

## III. RELEVANT LEGAL STANDARD

### A. Standard of Review

A court reviewing a denial of disability benefits may not determine de novo whether an individual is disabled. *See* 42 U.S.C. §§ 405(g), 1383(c)(3); *Wagner v. Sec'y of Health & Human Servs.*, 906 F.2d 856, 860 (2d Cir. 1990). Rather, the Commissioner's determination will only be reversed if the correct legal standards were not applied, or it was not supported by substantial evidence. *See Johnson v. Bowen*, 817 F.2d 983, 986 (2d Cir. 1987) ("Where there is a reasonable basis for doubt whether the ALJ applied correct legal principles, application of the substantial evidence standard to uphold a finding of no disability creates an unacceptable risk that a claimant will be deprived of the right to have her disability determination made according to the correct legal principles."); *Grey v. Heckler*, 721 F.2d 41, 46 (2d Cir. 1983); *Marcus v. Califano*, 615 F.2d 23, 27 (2d Cir. 1979).

"Substantial evidence" is evidence that amounts to "more than a mere scintilla," and has been defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401, 91 S. Ct.

1420, 1427 (1971). Where evidence is deemed susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld. *See Rutherford v. Schweiker*, 685 F.2d 60, 62 (2d Cir. 1982).

"To determine on appeal whether the ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight." *Williams v. Bowen*, 859 F.2d 255, 258 (2d Cir. 1988).

If supported by substantial evidence, the Commissioner's finding must be sustained "even where substantial evidence may support the plaintiff's position and despite that the court's independent analysis of the evidence may differ from the [Commissioner's]." *Rosado v. Sullivan*, 805 F. Supp. 147, 153 (S.D.N.Y. 1992). In other words, this Court must afford the Commissioner's determination considerable deference, and may not substitute "its own judgment for that of the [Commissioner], even if it might justifiably have reached a different result upon a de novo review." *Valente v. Sec'y of Health & Human Servs.*, 733 F.2d 1037, 1041 (2d Cir. 1984).

### B. Standard to Determine Disability

The Commissioner has established a five-step evaluation process to determine whether an individual is disabled as defined by the Social Security Act. *See* 20 C.F.R. § 404.1520. The Supreme Court has recognized the validity of this sequential evaluation process. *See Bowen v. Yuckert*, 482 U.S. 137, 140-42, 107 S. Ct. 2287 (1987). The five-step process is as follows:

> First, the [Commissioner] considers whether the claimant is currently engaged in substantial gainful activity. If he is not, the [Commissioner] next considers whether the claimant has a "severe impairment" which significantly limits his physical or mental ability to do basic work activities. If the claimant suffers such an impairment, the third inquiry is whether, based solely on medical evidence, the claimant has an impairment which is listed in Appendix 1 of the regulations. If the claimant has such an impairment, the [Commissioner] will consider him disabled without considering vocational factors such as age, education, and work experience; the [Commissioner] presumes that a claimant who is afflicted with a "listed" impairment is unable to perform substantial gainful activity. Assuming the claimant does not have a listed impairment, the fourth inquiry is whether, despite the claimant's severe impairment, he has the residual functional capacity to perform his past work. Finally, if the claimant is unable to perform his past work, the [Commissioner] then determines whether there is other work which the claimant could perform. Under the cases previously discussed, the claimant bears the burden of the proof as to the first four steps, while the [Commissioner] must prove the final one.

*Berry v. Schweiker*, 675 F.2d 464, 467 (2d Cir. 1982).

## IV.   ANALYSIS

### A.   Whether the ALJ Properly Analyzed Plaintiff's Depression at Step Two.

After carefully considering the matter, the Court answers this question in the affirmative, for the reasons stated in Defendant's memorandum of law. (Dkt. No. 13 at 5-9 [Def.'s Mem. of Law].) The Court adds the following analysis.

At step two of the sequential evaluation process, the ALJ must determine whether the plaintiff has a severe impairment that significantly limits his or her physical or mental ability to do basic work activities. *See* C.F.R. § 404.1520(c). The plaintiff bears the burden of presenting evidence establishing severity. *Miller v. Comm'r of Social Sec.,* No. 05-CV-1371, 2008 WL 2783418, at *6-7 (N.D.N.Y. July 16, 2008); *see also* 20 C.F.R. § 404.1512(a). Although the Second Circuit has held that this step is limited to "screen[ing] out de minimis claims," *Dixon v. Shalala,* 54 F.3d 1019, 1030 (2d

6

Cir.1995), the "mere presence of a disease or impairment, or establishing that a person has been diagnosed or treated for a disease or impairment" is not, by itself, sufficient to render a condition "severe." *Coleman v. Shalala,* 895 F.Supp. 50, 53 (S.D.N.Y. 1995). Indeed, a "finding of 'not severe' should be made if the medical evidence establishes only a 'slight abnormality' which would have 'no more than a minimal effect on an individual's ability to work.'" *Rosario v. Apfel,* No. 97-CV-5759, 1999 WL 294727, at *5 (E.D.N.Y. March 19,1999) (quoting *Bowen v. Yuckert,* 482 U.S. 137, 154 n.12, 107 S.Ct. 2287 (1987)).

In addition, "[w]here an ALJ has omitted an impairment from step two of the sequential analysis, other courts have declined to remand if the ALJ clearly considered the effects of the impairment in the remainder of his analysis." *Chavis v. Astrue*, No. 07-CV-0018, 2010 WL 624039, at *12 (N.D.N.Y. Feb.18, 2010); *Lasiege v. Colvin*, No. 12-CV-1398, 2014 WL 1269380, at *10-11 (N.D.N.Y. Mar. 25, 2014); *Reices-Colon v. Astrue*, 523 F. App'x 796, 798 (2d Cir. 2013) (finding the alleged step two error harmless because the ALJ considered the plaintiff's impairments during subsequent steps); *see also* 20 C.F.R. § 404.1523, (stating that the ALJ is required to consider the "combined effect of all of [plaintiff's] impairments without regard to whether any such impairment, if considered separately would be of sufficient severity"). It has been well established that "[b]ecause step two merely serves as a filter to screen out *de minimis* disability claims, a finding of any severe impairment, whether attributable to a single condition or a combination of conditions, is enough to satisfy its requirements." *Kessler v. Colvin*, 48 F.Supp.3d 578, 593 (S.D.N.Y. 2014) (*citing Fortier v. Astrue*, No. 10-CV-01688, 2012 WL 3727178, at *9 (D. Conn. May 11, 2012)).

Initially, the ALJ determined that Plaintiff's depression was not a medically determinable impairment because the record did not contain a psychiatric diagnosis. (T. 18.)[2] The ALJ also concluded that even if Plaintiff's depression was a medically determinable impairment, it could not be considered a severe impairment because it did not meet the durational requirements set by the Regulations in 20 C.F.R. § 404.1519, Plaintiff's symptoms improved with medication, Plaintiff's depression did not cause limitations in activities of daily living or social functioning, and Plaintiff's depression caused only mild limitations in concentration, persistence and pace. (T. 19)

On March 24, 2011, Frederico Loinaz, M.D., assessed Plaintiff with "mild chronic mental depression" and noted that medication was "improving" Plaintiff's mood. (T. 431.) However, the "mere presence of a disease or impairment, or establishing that a person has been diagnosed or treated for a disease or impairment" is not, itself, sufficient to deem a condition severe. *McConnell v. Astrue,* 2008 WL 833968, at *2 (N.D.N.Y.2008) (citing *Coleman,* 895 F.Supp. at 53).

Plaintiff argues the ALJ dismissed the opinion of Plaintiff's mental health provider without "citing facts, evidence or opinions to the contrary." (Dkt. No. 12 at 13 [Pl.'s Mem. of Law].) The record contains no evidence of mental health counseling until January 25, 2012. (T. 486.) In 2012 Plaintiff sought treatment from Mr. Robert Bowser, LCSWR. Mr. Bowser diagnosed Plaintiff with depression. (T. 490.)[3] Only acceptable medical sources, as defined by the Regulations, can provide evidence to establish a

---

[2] Of note, Plaintiff did not allege disability due to depression, or any other mental impairment in his application for benefits. (T. 168.)

[3] The diagnosis reads "311" which is medical coding for "depressive disorder, not elsewhere classified." https://www.cms.gov/medicare-coverage-database

8

medically determinable impairment. 20 C.F.R. § 404.1513(a).  However, as the ALJ properly reasoned, even assuming Plaintiff was diagnosed with depression it was not a severe impairment.

The ALJ properly assessed Plaintiff's mental impairment at step two and contrary to Plaintiff's allegations, the ALJ did not improperly dismiss the medical opinion of Mr. Browser without explanation.  The ALJ provided a proper analysis supporting her determination that Plaintiff's mental impairment was non-severe.  First, Plaintiff did not allege disability due to a mental impairment.  Second, the medical record failed to provide a diagnosis of depression from an acceptable medical source.  Even if the record provided such diagnosis, the record indicated that Plaintiff's depression was mild and managed with medication.  (T. 486.)  Plaintiff first sought mental health treatment in 2012.  (*Id.*)  Treatment notes indicated that Plaintiff's mild depression "improved" with medication.  (T. 491, 493.)  The medical record therefore failed to establish a severe mental impairment.

### B. Whether the ALJ Properly Assessed the Medical Opinion Evidence in the Record.

After carefully considering the matter, the Court answers this question in the affirmative, for the reasons stated in Defendant's memorandum of law.  (Dkt. No. 13 at 9-19 [Def.'s Mem. of Law].)  The Court adds the following analysis.

The opinion of a treating source will be given controlling weight if it "is well supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record."  20 C.F.R. § 404.1527(c)(2).

The following factors must be considered by the ALJ when deciding how much weight the opinion should receive, even if the treating source is not given controlling weight: "(i) the frequency of examination and the length, nature, and extent of the treatment relationship; (ii) the evidence in support of the opinion; (iii) the opinion's consistency with the record as a whole; and (iv) whether the opinion is from a specialist." 20 C.F.R. § 404.1527(c)(2). The ALJ is required to set forth his reasons for the weight he assigns to the treating physician's opinion. *Id.*, *see also* SSR 96-2p, 1996 WL 374188 (July 2, 1996); *Shaw v. Chater*, 221 F.3d 126, 134 (2d Cir. 2000) (quoting *Clark v. Comm'r of Soc. Sec.*, 143 F.3d 115, 118 (2d Cir.1998)).

Plaintiff argues the ALJ failed to provide controlling weight to the 2011 opinions of George Mina, M.D. and Juan Diego Harris, M.D., and the opinions of Bruce Baird, M.D., and Dr. Loinaz. (Dkt. No. 12 at 14-17 [Pl.'s Mem. of Law].)[4] Plaintiff further argues the ALJ erred in providing weight to the opinions of "non-treating" physicians Christopher Horn, M.D., Roberto Rivera, M.D., and Gerald Coniglio, M.D. (*Id.*)

Plaintiff argues that the ALJ erred in assessing the opinions of Dr. Mina and Dr. Harris because the ALJ failed to follow the factors outlined in 20 C.F.R. 404.1527(d)(2)-(6). (Dkt. No. 12 at 14-15 [Pl.'s Mem. of Law].) Specifically, Plaintiff argues the ALJ failed to acknowledge Dr. Mina as an orthopedic specialist and Dr. Harris as a pain specialist. (*Id.* at 15.) However, where an ALJ's reasoning and adherence to the Regulations is clear, she is not required to explicitly go through each and every factor of the Regulation. *Atwater v. Astrue*, 512 F. App'x 67, 70 (2d Cir. 2013) (plaintiff challenged ALJ's failure to review explicitly each factor provided for in 20 C.F.R. §

---

[4] The ALJ provided the opinions of Dr. Mina and Dr. Harris "great weight;" however, he provided their 2011 medical source statements "little evidentiary weight." (T. 23, 24-25.)

10

404.1527(c), the Court held that "no such slavish recitation of each and every factor [was required] where the ALJ's reasoning and adherence to the regulation [was] clear"). Here, the ALJ acknowledged that Dr. Mina and Dr. Harris were Plaintiff's treating physicians. (T. 22, 24.) Dr. Mina's records clearly indicated that he was "board certified [in] orthopedic surgery." (T. 484.) Dr. Harris's treatment notes stated he was a pain management specialist. Therefore, contrary to Plaintiff's allegations, the ALJ did not err in failing to explicitly recognize Dr. Mina and Dr. Harris as specialists in her decision.

Regarding the opinions of Dr. Mina and Dr. Harris, Plaintiff further argues the ALJ erred in her conclusion that their treatment notes did not show a worsening progression in Plaintiff's back condition. (Dkt. No. 12 at 16 [Pl.'s Mem. of Law].) Plaintiff argues that the ALJ's conclusion, that the evidence did not show a worsening condition, indicated that the record was "unclear" and therefore the ALJ had a duty to contact the providers for further clarification. To be sure, the ALJ is under an affirmative duty to "make every reasonable effort" to develop the record. 20 C.F.R. § 404.1512(d). However, reviewing courts hold that ALJs are not required to seek additional information absent "obvious gaps" that preclude an informed decision. *Rosa v. Callahan,* 168 F.3d 72, 79 n. 5 (2d Cir. 1999); *see also Hart v. Comm'r of Soc. Sec.,* No. 07-CV-1270, 2010 WL 2817479, at *5 (N.D.N.Y. July 10, 2012). Here, there are no "obvious gaps" in the record because medical records from Dr. Mina and Dr. Harris were complete and thorough. There was no indication that the AL misunderstood the evidence. Therefore, the ALJ was not required to re-contact Plaintiff's treating physicians.

Plaintiff further argues the ALJ erred in assessing the opinions of non-treating physicians, Dr. Baird, Dr. Horn, and Dr. Loinaz. (Dkt. No. 12 at 15 [Pl.'s Mem. of Law].)[5] Essentially, Plaintiff argues the opinions of the non-treating physicians "should not, and [cannot], carry more weight than the opinions of Plaintiff's treating physicians." (*Id.*) To be sure, "[g]enerally, [an ALJ] give[s] more weight to opinions from [plaintiff's] treating sources" than non-treating sources. 20 C.F.R. § 404.1527(c)(2). However, an ALJ "is entitled to rely upon the opinions of both examining and non-examining State agency medical consultants," particularly where the consultant's opinion is supported by the weight of the evidence. *Garrison v. Comm'r of Soc. Sec.*, No. 08-CV-1005, 2010 WL 2776978 at *4 (N.D.N.Y. June 7, 2010). Therefore, the ALJ was well within her discretion to afford non-treating providers, such as Dr. Horn, great weight.

The ALJ here gave the greatest weight to Plaintiff's treating sources in accordance with the Regulations. The ALJ also properly afforded the one time medical examiner, Dr. Horn, "great weight" reasoning his opinion was supported by his findings, by objective medical evidence, and by other clinical findings in the record. (T. 25.) Contrary to Plaintiff's assertions, the Regulations do not require an ALJ to provide less weight to the medical opinions of non-treating sources merely because they are non-treating sources. Therefore, the ALJ did not err in affording weight to Plaintiff's treating and non-treating sources.

Plaintiff further argues that the ALJ's RFC analysis was not supported by substantial evidence because the medical opinions of Dr. Mina, Dr. Harris and Dr. Loinaz support greater limitations than accounted for in the ALJ's RFC determination.

---

[5] Plaintiff fails to provide a point of error regarding Dr. Loinaz's opinion.

(Dkt. No. 12 at 22- 25 [Pl.'s Mem. of Law].)  Dr. Mina and Dr. Harris provided limitations in 2011 which were more restrictive than the limitations they previously imposed on Plaintiff and more restrictive than the RFC determination.  However, the ALJ determined that the 2011 limitations were not supported by the evidence in the record, because the record failed to support the conclusion that Plaintiff's condition worsened.  (T. 23, 24.)  The ALJ afforded Dr. Loinaz's opinion "partial weight" to the extent it was consistent with the objective medical record.  (T. 24.)  For the reasons stated herein, the ALJ's RFC determination was supported by substantial evidence.

To be sure, Plaintiff's doctors imposed more restrictive limitations in 2011 than in earlier records; however, the ALJ properly reasoned that the 2011 limitations were not supported by the objective medical evidence in the record such as MRI results and examinations.  For example, in 2011 Dr. Mina determined that Plaintiff could only lift and carry ten pounds.  (T. 388.)  This limitation was not supported by Dr. Mina's examination of Plaintiff performed in May 2011, which was essentially unchanged from his examination of Plaintiff in April of 2009 during which Plaintiff was only restricted from performing "heavy lifting."  In April 2009, Dr. Mina opined Plaintiff's range of motion in his lumbar spine was "restricted by 50%" and it was "unlikely" Plaintiff could return to "heavy lifting and hard work."  (T. 251.)  At that time, Dr. Mina recommended vocational rehab indicating he believed Plaintiff could work in some capacity.  (*Id.*)  In May 2011, Dr. Mina observed Plaintiff had "moderately restricted" range of motion in his lumbar spine.  (T. 443.)  Dr. Mina also noted in March 2011 that Plaintiff was working with Vocational and Educational Services for Individuals with Disabilities ("VESID"), thus indicating Plaintiff was capable of some work.  (T. 442.)

Objective medical evidence also remained unchanged. MRI results from April 2011 remained unchanged from the MRI results from 2008. (T. 232, 260, 443.) As a further example, Dr. Loinaz opined in May 2011 that Plaintiff should "try to learn something to do with his hands and his brain." (T. 471.) This opinion contrasts with Dr. Loinaz's statement that Plaintiff's medication would "severely" limit Plaintiff's effectiveness due to distraction, inattention, and drowsiness. (T. 386.) Although Dr. Mina, Dr. Harris and Dr. Loinaz opined that Plaintiff had greater restrictions than imposed by the ALJ, the ALJ properly evaluated those opinions based on the objective medical evidence in the record and examination notes. Further, the ALJ provided a thorough discussion outlining her reasons for not adopting those restrictions.

The ALJ properly relied on the opinions of Dr. Mina, Dr. Harris, and Dr. Horn in formulating her RFC determination. For the reasons stated herein, and in the Defendant's brief, the ALJ did not err in affording weight to the medical opinions of the record and the ALJ's RFC determination was supported by substantial evidence.

Lastly, Plaintiff argues the ALJ improperly substituted her own lay opinion for that of medical opinion in the record. (Dkt. No. 12 at 17-18 [Pl.'s Mem. of Law].) The Second Circuit has held that "it is well-settled that the ALJ cannot arbitrarily substitute his own judgment for competent medical opinion.... [W]hile an [ALJ] is free to resolve issues of credibility as to lay testimony or to choose between properly submitted medical opinions, he is not free to set his own expertise against that of a physician who [submitted an opinion to or] testified before him." *Balsamo v. Chater,* 142 F.3d 75, 81 (2d Cir.1998). Plaintiff asserts the ALJ substituted her own opinion in concluding "the minimal abnormal findings during physical examinations, and the mild findings in the

MRI do not support the restrictive residual functional capacity as reflected in Dr. Mina's April 2011 statement." (T. 23.) Plaintiff also highlights the ALJ's conclusion that normal exam findings undermined Dr. Loinaz's prescribed limitations. (Dkt. No. 12 at 18 [Pl.'s Mem. of Law].)

Here, the ALJ was not substituting her own expertise for that of the physicians in the record. In pointing out minimal findings, objective MRI findings, and normal exam findings, the ALJ was citing to specific evidence in the record which did not support the medical opinions in the record. *See* 20 C.F.R. § 404.1527(c)(2). The ALJ conducted a proper analysis of the medical source opinions in the record and the RFC determination was supported by substantial evidence.

## C. Whether the ALJ Properly Assessed Plaintiff's Credibility.

After carefully considering the matter, the Court answers this question in the affirmative, for the reasons stated in Defendant's memorandum of law. (Dkt. No. 13 at 19-23 [Def.'s Mem. of Law].) The Court adds the following analysis.

A plaintiff's allegations of pain and functional limitations are "entitled to great weight where ... it is supported by objective medical evidence." *Rockwood v. Astrue*, 614 F. Supp. 2d 252, 270 (N.D.N.Y. 2009) (*quoting Simmons v. U.S. R.R. Ret. Bd.*, 982 F.2d 49, 56 (2d Cir.1992)). However, the ALJ "is not required to accept [a plaintiff's] subjective complaints without question; he may exercise discretion in weighing the credibility of the [plaintiff's] testimony in light of the other evidence in the record." *Genier v. Astrue*, 606 F.3d 46, 49 (2d Cir. 2010) (citing *Marcus v. Califano,* 615 F.2d 23, 27 (2d Cir.1979)). "When rejecting subjective complaints, an ALJ must do so explicitly and with

sufficient specificity to enable the Court to decide whether there are legitimate reasons for the ALJ's disbelief." *Rockwood*, 614 F. Supp. 2d at 270.

"The ALJ's credibility assessment must be based on a two step analysis of pertinent evidence in the record. First, the ALJ must determine whether the claimant has medically determinable impairments, which could reasonably be expected to produce the pain or other symptoms alleged." *Id.*, at 271.

> Second, if medically determinable impairments are shown, then the ALJ must evaluate the intensity, persistence, and limiting effects of the symptoms to determine the extent to which they limit the claimant's capacity to work. Because an individual's symptoms can sometimes suggest a greater level of severity of impairment than can be shown by the objective medical evidence alone, an ALJ will consider the following factors in assessing a claimant's credibility: (1) claimant's daily activities; (2) location, duration, frequency, and intensity of claimant's symptoms; (3) precipitating and aggravating factors; (4) type, dosage, effectiveness, and side effects of any medication taken to relieve symptoms; (5) other treatment received to relieve symptoms; (6) any measures taken by the claimant to relieve symptoms; and (7) any other factors concerning claimant's functional limitations and restrictions due to symptoms.

*Id.,* 20 C.F.R. 404.1529(c)(3)(i)-(vii). Further, "[i]t is the role of the Commissioner, not the reviewing court, "to resolve evidentiary conflicts and to appraise the credibility of witnesses," including with respect to the severity of a claimant's symptoms." *Cichocki v. Astrue*, 534 F. App'x 71, 75 (2d Cir. 2013) (*citing Carroll v. Sec'y of Health & Human Servs.,* 705 F.2d 638, 642 (2d Cir.1983)).

Here, the ALJ determined that Plaintiff's "medically determinable impairment could reasonably be expected to cause some of the alleged symptoms; however, the [Plaintiff's] statements concerning the intensity, persistence and limiting effects of these symptoms [were] not entirely credible." (T. 20.) Plaintiff argues the ALJ erred in her

credibility analysis because she misread a statement made by Dr. Harris, failed to properly acknowledge Plaintiff's activities of daily living, and failed to properly assess Plaintiff's work history. (Dkt. No. 12 at 18-22 [Pl.'s Mem. of Law].) Plaintiff also argues the ALJ failed to apply the proper legal standard in evaluating Plaintiff's credibility. (*Id.* at 21.)

In her credibility analysis, the ALJ erroneously stated that providers indicated Plaintiff's pain was "all in his head." (T. 22.) The notation from Dr. Harris actually reads, "doctors or nurses have not suggested that the pain is all in [Plaintiff's] head or that he is faking." (T. 357.) Defendant concedes that this was in error. (Dkt. No. 13 at 20 [Def.'s Mem. of Law].) However, Defendant argues this error was harmless because it was not the sole deciding factor in the ALJ's credibility analysis and further, substantial evidence supports her credibility analysis. The ALJ's misreading of Dr. Harris's notation was harmless error, the ALJ conducted an otherwise proper credibility analysis that was supported by substantial evidence regardless of Dr. Harris's statement.

Plaintiff also alleges the ALJ misread Plaintiff's activities of daily living because the ALJ failed to acknowledge that although Plaintiff attempted various activities, they were unsuccessful. (*Id.* at 21.) However, in her analysis, the ALJ remarked that Plaintiff's symptoms were exacerbated after performing exertional activities, such as vacuuming and working for Meals-On-Wheels. (T. 22.) The ALJ reasoned that Plaintiff's failed attempts to perform such activities suggested that he would not be able to perform "some types of work," however, he was not precluded from performing all types of work. The ALJ also took into consideration that Plaintiff sought employment,

worked VESID, and received unemployment benefits. (*Id.*) The ALJ was well within her discretion to evaluate Plaintiff's activities of daily living and other factors in determining her credibility assessment.

Plaintiff argues the ALJ erred because she did not take into consideration Plaintiff's strong work history in her credibility analysis. (Dkt. No. 12 at 20-21 [Pl.'s Mem. of Law].) To be sure, "a good work history may be deemed probative of credibility." *Schaal v. Apfel,* 134 F.3d 496, 502 (2d Cir.1998); *see also Rivera v. Schweiker,* 717 F.2d 719, 725 (2d Cir.1983) (noting that evidence of good work record is evidence of credibility). Work history, however, is "just one of many factors" appropriately considered in assessing credibility. *Schaal,* 134 F.3d at 502. The ALJ reasonably relied on the objective medical evidence in the record and other factors outlined in 20 C.F.R. § 404.1529(c)(3)(i)-(vii) in making a credibility determination. *See Wavercak v. Astrue*, 420 F. App'x 91, 94 (2d Cir. 2011) (good work history was not specifically referenced in the ALJ's decision does not undermine the credibility assessment, given the substantial evidence supporting the ALJ's determination.) Further, Plaintiff's work history was thoroughly discussed elsewhere in the decision, thus the ALJ was well aware of Plaintiff's strong work history.

Therefore, the ALJ's misreading of Dr. Harris's notation was harmless error. The ALJ properly analyzed Plaintiff's credibility in light of the objective medical evidence in the record and other factors outlined in the Regulations.

**ACCORDINGLY**, it is

**ORDERED** that Plaintiff's motion for judgment on the pleadings (Dkt. No. 12) is **DENIED**; and it is further

**ORDERED** that Defendant's motion for judgment on the pleadings (Dkt. No. 13) is **GRANTED**; and it is further

**ORDERED** that Defendant's decision denying disability benefits is **AFFIRMED**; and it is further is

**ORDERED** that Plaintiff's Complaint (Dkt. No. 1) is **DISMISSED**.

Dated: October 20, 2015
Syracuse, NY

_____
Hon. Glenn T. Suddaby
Chief, U.S. District Judge